UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD SUTHERLAND, ) | CASE NO. 5:10CV1236 |
| Plaintiff, ) ) | |
| ) | JUDGE DONALD NUGENT |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | **REPORT & RECOMMENDATION** |
| SOCIAL SECURITY, ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |

Richard Sutherland ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision:

I. **PROCEDURAL AND FACTUAL HISTORY**

On April 24, 2006, Plaintiff filed applications for SSI and DIB, alleging disability beginning October 30, 2005 due to left side paralysis, double brain aneurysms, brain surgery, headaches, high blood pressure, six angiograms, and pain on his left side. ECF Dkt. #11-6 at 2-9; ECF Dkt. #11-7 at 15. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #11-4 at 2-19.

Plaintiff filed a request for an administrative hearing and on October 15, 2008, an Administrative Law Judge ("ALJ") conducted an administrative hearing via video where Plaintiff was represented by counsel. ECF Dkt. #11-2 -at 7; ECF Dkt. #11-4 at 20. At the hearing, the ALJ heard testimony from Plaintiff and Mr. Parker, a vocational expert ("VE"). ECF Dkt. #11-2 at 7. On October 31, 2008, the ALJ issued a Notice of Decision - Unfavorable. ECF Dkt. #11-3 at 9-19. Plaintiff filed a request for review, which the Appeals Council denied. ECF Dkt. #11-2 at 2.

On June 2, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  On October 8, 2010, Plaintiff filed a brief on the merits.  ECF Dkt. #14. On December 17, 2010, Defendant filed his brief on the merits.  ECF Dkt. #17.

**II**.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from status post brain aneurysm and post-traumatic stress disorder ("PTSD"), both of which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). ECF Dkt. #11-3 at 11.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*. at 16.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform  light work with a sit/stand option, protection from exposed hazardous machinery and heights, no fine left hand motoring or manipulation, isolation from the public, and only occasional exposure to others. ECF Dkt. #11-3 at 16.

Based upon the VE's testimony and the RFC that he had determined, the ALJ found that Plaintiff could not perform his past relevant work as an auto detail worker, but he could perform jobs existing in significant numbers in the national economy, such as an inserter, price marker, and laundry sorter. ECF Dkt. #11-3 at 17-18.  The ALJ therefore determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB or SSI.  *Id.* at 18.

**III.**    **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in

|    |    |
|----|----|
|    | 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992)); |
| 4. | If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992)); |
| 5. | If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)). |

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. RFC AND NON-TREATING MEDICAL SOURCE OPINIONS

Plaintiff first contends that substantial evidence does not support the ALJ's RFC and the ALJ failed to use the proper legal criteria in order to determine his RFC. ECF Dkt. #14 at 10. Plaintiff asserts that the ALJ erred in rejecting the opinion of consultative examining psychologist John Comley and erred by failing to acknowledge, analyze or explain the weight, if any, given to the opinion of consulting examiner Dr. Perry Williams. ECF Dkt. #14 at 12-13.

#### 1. DR. COMLEY'S ASSESSMENT

On April 25, 2007, Dr. Comley conducted an mental functional capacity assessment at the request of the Wayne County Department of Jobs and Family Services. ECF Dkt. #11-15 at 3. Dr. Comley noted that Plaintiff presented as somewhat defensive and irritable at the beginning of the assessment, informing Dr. Comley that "I am applying for Social Security, I am able to work at a sit down job, but I can't get along with people." *Id.* at 4. Dr. Comley reported that he was able to establish only fair rapport with Plaintiff due to his emotional distance and resentment. *Id.* Plaintiff appeared "flippant, labile, arrogant, manipulative, resentful and impatient" during the assessment. *Id.* Plaintiff discussed his childhood with Dr. Comley, which included the facts that his parents were alcoholics and a molestation of his sibling in the bedroom that they shared. *Id.* He stated that when he was eleven years old, he got a rifle and shot it at a person in order to protect his sibling. *Id.* He further related that he had been in fights to protect women, he threatened to kill a police chief when he was 18 years old, he was in a detention center in Holmes County, and he had been in jail on a hit and run. *Id.* Plaintiff further informed Dr. Comley that he had been stabbed when he was 14 years old and he had issues with his father "seeing things growing up." *Id.* He also reported that he had never received counseling for his mental health problems. *Id.*

Dr. Comley reported that Plaintiff attempted to complete the Minnesota Multiphasic Personality Inventory-2 ("MMPI-II") but the results were considered invalid. ECF Dkt. #11-15 at 4-5. Plaintiff appeared to do his best on the Weschler Adult Intelligence Scale-III ("WAIS-III"), which showed him to be in the low end of the average range. *Id.* at 5. Dr. Comley found no

-4-

cognitive dysfunction or deviancy in Plaintiff's thought processes and no abnormalities in Plaintiff's perceptual functioning. *Id.*

In the diagnosis section of his assessment, Dr. Comley listed "Rule out Impulse Control Disorder NOS" and "Rule Out Antisocial Personality Disorder." ECF Dkt. #11-15 at 5. Dr. Comley noted that the "rule out" listings were not diagnoses, but suggested that Plaintiff may have the conditions. *Id*. He also indicated that Plaintiff "may have a history of PTSD that may be at the basis of these problems." *Id*. at 6. Dr. Comley's recommendations included psychological treatment for Plaintiff, including individual psychotherapy and anger control therapies, and a psychiatric evaluation as he would benefit from a mood stabilizer. *Id.*

Dr. Comley added a post-script to his assessment, indicating that Plaintiff had called him after Dr. Comley had informed Plaintiff that he would attempt to complete Plaintiff's evaluation by April 23, 2007. ECF Dkt. #11-15 at 6. Dr. Comley indicated that on April 25, 2007, Plaintiff left the following message on his answering machine:

> This is Richard Sutherland, apparently you have forgotten about me. I am completely out of my medicine. I can't get no where without you doing your job. You said you was going to have the report in my[sic] Monday. You called my number and told me that you wasn't got to it but you'd have it in by the end of the week. And it's a week later and they still haven't got it. Now I'm about ready to snap and if I do you'd be the first one I'd come to. You hear me.

*Id*. Dr. Comley noted that Plaintiff had reported to him at the assessment that he was on no medication. *Id*. Dr. Comley also attached a copy of a letter that Plaintiff had left under his door after the evaluation, where Plaintiff outlined his symptoms, conditions and limitations from his mental and physical problems. *Id*. at 9.

In the mental functional capacity assessment form, Dr. Comley checked the boxes indicating that Plaintiff had no limitations in: remembering locations and work-like procedures; understanding, remembering and executing very short and simple instructions; performing activities within a schedule; regularly attending activities and being punctual; sustaining an ordinary routine without special supervision; making simple work-related decisions; interacting appropriately with the general public; asking simple questions or requesting assistance; responding appropriately to

changes in the work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places; and using public transportation. ECF Dkt. #11-15 at 8. Dr. Comley found that Plaintiff was not significantly limited in his abilities to: understand, remember and execute detailed instructions; socially interact; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or to set realistic goals or make plans independently of others. *Id.* Dr. Comley found Plaintiff moderately limited in his abilities to: work in coordination with or proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. *Id.* Dr. Comley found that Plaintiff was markedly limited in his ability to accept instructions and to respond appropriately to criticism from supervisors. *Id.* Dr. Comley further opined that Plaintiff was unemployable and that his mental functional limitations would last a period of twelve months or more. *Id*.

It must be remembered that the ultimate responsibility for determining a claimant's RFC rests with the ALJ and that determination is based upon the evaluation of the medical evidence and the claimant's testimony. 42 U.S.C. § 423(d)(5)(B); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ultimate determination of disability also rests with the ALJ and thus medical source opinions about the ultimate issue of disability are not entitled to any particular weight. 20 C.F.R. §§ 404.1527(e), 416.927(e); *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).

Moreover, as Plaintiff recognizes, both Dr. Comley and Dr. Williams are one-time consultative examiners. Generally, greater weight is given to the opinions of treating physicians followed by opinions of non-treating examining physicians and then opinions of non-examining physicians. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); 20 C.F.R. §§ 404.1527(d)(1-2) and 416.927 (d)(1-2). When an ALJ does not give the opinion from a treating physician controlling weight or one is lacking in the record, the ALJ must consider the following

-6-

factors in order to determine the weight to attribute to the opinions of the other physicians:

> the length and nature of the treatment relationship, the evidence that the physician offered in support of [his] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in [his] speciality.

*Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)). With regard to nontreating, but examining, sources, the agency will simply '[g]enerally [ ] give more weight to the opinion of a source who examined [the claimant] than to the opinion of a source who has not examined' " him. *Ealy,* 594 F.3d at 514. The procedural "good reasons" requirement that applies to rejecting a treating physician's opinion does not apply to non-treating physicians. *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir. 2007)(explaining that "[i]mportantly ... this reasons giving requirement exists only for § 404.1527(d)(2), and not for the remainder of § 404.1527" and concluding: "[i]n the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* [*v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004)] by failing to give reasons for not accepting their reports").

In his decision, the ALJ briefly reviewed Dr. Comley's assessment and explained that the only evidence to deal extensively with Plaintiff's mental health was his evaluation. ECF Dkt. #11-3 at 15. The ALJ initially noted that he considered the evaluation with caution, as Dr. Comley reported that he "was able to establish only fair rapport with Mr. Sutherland, primarily because of his emotional distance and resentment." ECF Dkt. #11-3 at 13. The ALJ also cited Plaintiff's report to Dr. Comley that he was able to work at a sit-down job but he had trouble getting along with people. *Id*. The ALJ further indicated that despite a lengthy interview and the administration of two standardized examinations, Dr. Comley did not diagnose Plaintiff with any mental impairment, only offering "rule out" diagnoses of impulse control disorder not otherwise specified and antisocial personality disorder. *Id*. at 14. Moreover, the ALJ found it odd that Dr. Comley checked "unemployable" for a period of twelve months or more on the mental functional capacity form despite his failure to diagnose Plaintiff with any mental health impairment. *Id*. The ALJ explained that Dr. Comley's "unemployable" finding was odd not only because he did not diagnose Plaintiff with any mental impairment, but also because he found Plaintiff markedly limited in only one area and moderately limited in three areas out of a total of 20 areas of functioning. *Id*. The ALJ thus

-7-

rejected this part of Dr. Comley's opinion, finding that it was utterly inconsistent with Dr. Comley's factual findings and/or made because Plaintiff had threatened Dr. Comley. *Id.* at 15. The ALJ also found that his RFC appropriately addressed the boxes checked by Dr. Comley to the extent did not indicate greater limitations that those that he had found for Plaintiff's RFC. *Id.*

The undersigned recommends that the Court find that while the ALJ should have more thoroughly explained his treatment of Dr. Comley's opinion and the evidence in favor of his RFC, substantial evidence nevertheless supports the ALJ's treatment of the opinion and his RFC. As noted by the ALJ, Dr. Comley did not diagnose Plaintiff with any mental health impairment despite a lengthy interview and the administration of two standardized tests. ECF Dkt. #11-3 at 14. Further, the ALJ properly noted that Dr. Comley's finding of unemployability was not supported by his factual findings, since Dr. Comley found Plaintiff markedly limited in only one area out of 20 areas of functioning, and only moderately limited in 3 of those 20 areas. *Id.* The ALJ therefore concluded that Dr. Comley's own factual findings contradicted a finding of unemployability. In addition, the ALJ noted the inconsistency of Plaintiff's testimony with Dr. Comley's opinion as to unemployability as Plaintiff had testified that he saw no reason why he could not work several full-time light jobs that the ALJ had described to him. *Id.* at 15. In addition, the ALJ explained that his RFC, which included isolation from the public and only occasional exposure to others, adequately addressed the limitations that he believed Plaintiff had. *Id.*

For these reasons, the undersigned recommends that the Court find that substantial evidence supports the ALJ's treatment of Dr. Comley's assessment and the ALJ's RFC for Plaintiff.

### 2. **DR. WILLIAMS' ASSESSMENT**

Plaintiff also asserts that the ALJ erred in failing to address the opinion of Dr. Perry Williams, the consultative examiner, who opined that due to Plaintiff's cerebral aneurysm suffered in 1992, he has had chronic headaches and persistent numbness and tingling in his left upper and lower extremities with decreased use. ECF Dkt. #11-15 at 24. Dr. Williams cited Plaintiff's health status as poor but stable and opined that Plaintiff could stand/walk two to four hours of an eight-hour workday, for one to two hours at a time without interruption. *Id.* at 25. He further concluded that

-8-

Plaintiff's ability to sit was not affected, but he could only lift and carry frequently and occasionally five to ten pounds. *Id*. Dr. Williams further opined that Plaintiff was markedly limited in his ability to push and pull, was moderately limited in reaching, handling, performing repetitive foot movements, and was not significantly limited in bending. *Id*. Dr. Williams explained that Plaintiff's decreased use of his upper and lower extremities were the basis of his limitations for Plaintiff. *Id.* Dr. Williams noted that Plaintiff's last examination was on May 26, 2006. *Id.*

Plaintiff is correct that the ALJ failed to mention Dr. Williams' evaluation. However, the undersigned recommends that the Court find that remand of this case is not necessary for the ALJ to address Dr. Williams' opinion. In *Kornecky v. Commissioner of Social Security*, 167 Fed. App'x 496, 507-508 (6th Cir. 2006), the Sixth Circuit Court of Appeals applied the harmless-error rule when an ALJ failed to explain why he favored several examining physicians' opinions over the opinions of other examining physicians. The Court explained why its decision in *Wilson v. Commissioner of Social Security*, 378 F.3d at 547-548 (6th Cir. 2004)[1] did not apply :

> [T]he ALJ neither misstated nor ignored a treating physician's opinion; he merely failed to explain why he favored several examining physicians' opinions over another's. The regulation at issue in *Wilson* simply does not apply, and there is no reason to depart from the usual harmless-error rule. *See generally* 5 U.S.C. § 706 (when a court determines whether agency action was lawful, "due account shall be taken of the rule of prejudicial error"); *see, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.2001) (refusal to even acknowledge the opinion of a treating physician was harmless error, because physician provided no objective basis for his conclusions and his opinion was contradicted by the weight of the other evidence).
>
> No purpose would be served by remanding for the ALJ to explicitly address the shortcomings of [an examining physician's] opinion and the evidence and methods underlying it. *Cf. Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) (citation omitted) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."). While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> an ALJ can consider all the evidence without directly addressing in his

---

[1] In *Wilson*, the Court held that the Social Security regulations required that the ALJ give good reasons for the weight given a treating physician's opinion and that the harmless error rule did not apply to Wilson's case. 378 F.3d at 547.

> written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.
>
> *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted).

*Kornecky*, 167 Fed. Appx. 496, 507-508 (6th Cir.2006); *Bollenbacher v. Comm'r of Soc. Sec., 621* F.Supp.2d 497 (N.D.Ohio 2008) (finding that "[a]utomatic remand" was not warranted where ALJ failed to explain reasons for apparently rejecting an examining physician's opinion and "the usual harmless error standard applies").

In the instant case, Dr. Williams is an examining physician who conducted an evaluation for the Wayne County Department of Job and Family Services. ECF Dkt. #11-15 at 24. Dr. Williams provides very few clinical findings and no laboratory tests to support his findings. *Id.* He merely noted that Plaintiff's neurological signs were intact, with decreased reflexes and movement in the left arm and left leg. *Id.* He left blank the part of the form requesting physical findings. *Id.* Moreover, Dr. Williams merely stated that Plaintiff had decreased use of his upper and lower extremities as the medical evidence leading to his standing, lifting and pushing/pulling limitations. *Id.* An ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Kornecky*, 167 Fed. App'x at 509. In addition, it is clear from the ALJ's decision that he attributed more weight to the opinion of Dr. Saghal, an agency examining physician who examined Plaintiff in July 2006 and opined that Plaintiff had: a somewhat impaired ability to lift and carry and a somewhat diminished ability to grasp with the left hand with definite impairment in lifting and handling for prolonged periods, especially with the left upper extremity and hand; and no impairment in sitting and standing, but he could not sit or stand for prolonged periods. ECF Dkt. #11-3 at 13, quoting ECF Dkt. #11-14 at 4. Dr. Saghal provided great detail of the examination, which included a finding of muscular atrophy in the left forearm and left lower extremity, a gross normal neurological examination, except for left arm and left leg weakness, with decreased sensation and motor weakness, normal upper extremity motor strength, dynamometer readings, grasp, manipulation, pinch and fine coordination testing, and range of motion testing for the cervical spine, shoulders, elbows, wrists, hands, lumbar spine, hips,

knees, and ankles. ECF Dkt. #11-14 at 3-4.  The ALJ also cited to neurological results from 2008 showing a normal EMG nerve conduction study of Plaintiff's lower and upper extremities and no significant pathology on the lumbar spine CT scan.  ECF Dkt. #11-3 at 14.

In addition to the medical evidence of record, the ALJ also cited to non-medical evidence in supporting his RFC.  He noted Plaintiff's report to Dr. Comley that he was able to work at a sit-down job.  ECF Dkt. #11-3 at 13.  He also noted that despite his reported left-sided weakness, Dr. Talampas had noted that Plaintiff had told her that he had been getting into a lot of fights and beating people up in September 2008.  *Id*. at 15.  The ALJ also noted Plaintiff's testimony that he was not aware of any reason why he could not perform the several full- time jobs that the ALJ had described to him at the hearing.  *Id*. at 15.

Based upon the medical evidence provided by Dr. Saghal and the non-medical evidence cited by the ALJ, the undersigned recommends that the Court find no merit to Plaintiff's assertion.

### B.     **FULL AND FAIR HEARING**

Plaintiff also contends that the ALJ did not provide him with a full and fair hearing.  ECF Dkt. #14 at 14.  Plaintiff asserts that the ALJ's questioning of him was actually unfair and adversarial.  *Id.*  Plaintiff indicates that his response to the ALJ's repeated pressing of him with questions of how he could engage in fistfights despite his allegations of disability and left-sided weakness showed his underlying mental impairments.  *Id*.  Plaintiff asserts that the ALJ should not be able to rely upon his response to this line of adversarial questioning that he "guess[ed]" nothing would prevent him from performing the jobs that the ALJ had described to him at the hearing.  *Id.* at 15.

At the hearing, the following colloquy occurred, with the ALJ asking the questions and Plaintiff responding:

> Q:   Would you say in the last six months or so you've been fairly weak and without a lot of strength?
>
> A:   Yeah.  It's been that way –
>
> Q:   Well then, if that's the case, let me ask you this question.  How do you manage to get in a lot of fights and beat people up?

> ALJ:   Exhibit 13F, page 1, counsel, in case you want to follow along.
>
> ATTY: No, I, I –
>
> BY ADMINISTRATIVE LAW JUDGE:
>
> Q:   How do you manage to, how do you manage to do that, sir, in view of what you've told me is your weakness, and fatigue, fatigue?
>
> A:   I'm right-handed. I'm not left-handed.
>
> Q:   No, here's the question [INAUDIBLE] ask you. You've just told me that you've felt very weak and that you haven't had a lot of strength in the last six months, and I have [INAUDIBLE] –
>
> A:   Not on my left side, no.
>
> Q:   So, in your, in your, in your right side, you're fine?
>
> A:   Right.
>
> Q:   Are you able to fight with people?
>
> A:   Yeah.
>
> Q:   Well then, then if, if you can get in fights with people, I'm having a hard time understanding why you can't work at a job, say, where you didn't have to deal with people. Well, I'll give you three examples.

ECF Dkt. #11-2 at 24-25. The ALJ then consulted on the record with the vocational expert, who provided three examples of jobs with light exertional requirements, a sit-stand option, no exposure to unprotected heights or machinery, and a limitation that the job could be performed alone or with just occasional contact with co-workers. *Id*. at 25. The ALJ then asked Plaintiff:

> Q:   I asked you, Mr. Sutherland, what would stop you from working full-time at one of the jobs Mr. Parker and I just identified for you? They all involve lifting less than 20 pounds. They all would let you sit and stand whenever you wanted to. They all would not expose you to heights or unprotected heights or, or hazardous machinery. So I ask you, sir, what would prevent you from doing one of those jobs full-time? And what would have prevented you from doing one of them full-time since 2005?
>
> A:   I guess nothing.

*Id.* at 26-27. Further on in the hearing, after Plaintiff's attorney raised the issue relating to Plaintiff engaging in fighting, Plaintiff explains:

> A:   I just snap. Something'll[sic] just set me off, and I'll just go off.

-12-

*Id*. at 33.  The ALJ and Plaintiff thereafter engaged in the following discussion:

> Q: Where do these fights occur?
>
> A: Where?
>
> Q: Where?
>
> A: Usually in parking lots.
>
> Q: How do you get into a parking lot?  Do you drive to a place?
>
> A: No.
>
> Q: How do you get there?
>
> A: I have somebody drive me.
>
> Q: So how do you get into a parking lot fight when someone else is driving you to a particular spot?  How does it happen?
>
> A: That way nobody's on each other's property.
>
> Q: Okay.  Go on.  I mean, is, is this a fistfight we're talking about, or a verbal fight?
>
> A: No, they're fistfights.
>
> Q: Okay, see I, I'm, I'm having a little trouble understanding how you can do that with, with the effect of your medication making you dizzy and with your left side being weak.  I mean, I don't understand how you can be getting into fistfights like that.  Can you, can you help me understand how that could happen?
>
> A: Well, I didn't say I won them all.
>
> Q: I'm not asking you that question, sir.  It's just kind of hard for me to understand how a person saying that they're so disabled they can't do any kind of work on a full-time basis can be getting into fistfights in a relatively recent period of time.  That, that on the surface of things, is kind of confusing to me and I'm, I'm wondering if you can help me understand it.  I mean [INAUDIBLE]
>
> A: You ain't never had that rage.
>
> Q: – person might say, how can a person say they're disabled when they have enough strength to get into a fight with somebody.
>
> A: You ever been into a rage.
>
> Q: I don't know.  I'm asking you.
>
> A: Well, I can't tell somebody that's never been in my position.

> Q: [INAUDIBLE] disabled. I've never contended that I'm disabled and I'm, I'm, and I'm able to fight at the same time, and that's why I'm wondering, how can you say one and the, and the other at the same time? Help me understand it.
>
> A: I can't make you understand it. If you've never been in any type, type of a rage, then you wouldn't know, knew nothing about it.

*Id.* at 33-35.

Plaintiff is correct that social security proceedings are inquisitorial, not adversarial. *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); see also 20 C.F.R. §404.900(b). The ALJ has "the duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111, citing *Richardson v. Perales*, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court begins with the presumption "that administrative adjudicators are unbiased, and that honesty and integrity exist among them." *Wells v. Apfel,* 234 F.3d 1271 (Table), No. 99-5548, 2000 WL 1562845, at *5 (6th Cir. Oct. 12, 2000), unpublished, citing *Schwiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Navistar Intern. Transp. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir.1991). In *Wells*, the Sixth Circuit Court of Appeals found that a social security claimant waived her right to appeal the issue of an unfair hearing due to the bias of an ALJ because she failed to exhaust her administrative remedies on the issue as she did not request removal of the ALJ or raise the issue before the Appeals Council. 2000 WL 1562845, at *6, quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1151 (3rd Cir. 1971). In this case, however, Plaintiff's counsel raised the issue of the allegedly unfair hearing and the ALJ's behavior at the hearing to the Appeals Council. ECF Dkt. #11-5 at 26. Thus, Plaintiff in this case has not waived the issue.

However, a review of the transcript shows that the ALJ asked numerous questions regarding Plaintiff's ability to engage in fistfights despite the fact that he alleged physical disabilities such as left-sided weakness and fatigue. *See supra*. However, the undersigned recommends that the Court find that the ALJ did have the right to inquire as to this conflict between Plaintiff's allegations of physical disability and his physical ability to engage in fights. *See Walker v. Comm'r of Soc. Sec*., 2009 WL 3152980, at *12 (W.D. Mich. Sept. 24, 2009),

-14-

unpublished (ALJ had right to inquire about claimant smoking marijuana "blunts" because social security benefits cannot be awarded where drug or alcohol abuse is material to disability finding.).  The ALJ was not disrespectful to Plaintiff or his counsel in this case.  Even if ALJ was discourteous or demeaning, it is not a basis for overturning the ALJ's decision.  *Id*., citing and quoting *Collier v. Comm'r of Soc. Sec.,* 108 Fed. App'x 358, 364 (6th Cir. Aug. 24, 2004), unpublished ("[w]hile some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing.").  The ALJ allowed Plaintiff to answer the questions that he asked and gave Plaintiff's counsel an opportunity to ask Plaintiff questions immediately following those of the ALJ.  ECF Dkt. #11-2 at 27.

   Further, it is true that the ALJ did use Plaintiff's testimony that he was not aware of any reason why he could not perform the three jobs that the ALJ and vocational expert described at the hearing as a reason for finding him able to perform a reduced range of light work.  ECF Dkt. #11-3 at 15 ("[p]erhaps the most convincing evidence comes from the claimant himself, who when asked by me at the hearing whether he knew of any reason why he could not perform, full-time, several light jobs described to him, replied that he was not aware of any.").  The ALJ footnoted that he had engaged in a colloquy with Plaintiff's counsel at the end of the hearing and asked counsel whether he should believe Plaintiff's testimony as to this statement, which would result in an unfavorable decision, or not believe this testimony, which would leave the ALJ with the task of determining which parts of Plaintiff's testimony to believe.  *Id*. at 15, fn. 24.  The ALJ noted that counsel "strived mightily," but could not overcome "this dilemma."  *Id*.  Despite his use of Plaintiff's statement, the ALJ did not rely solely on the statement for finding Plaintiff not disabled.  The ALJ also cited to Dr. Saghal's assessment, who had examined Plaintiff in July 2006 and found that Plaintiff had a somewhat impaired ability to lift and carry and a somewhat diminished ability to grasp with the left hand with definite impairment in lifting and handling for prolonged periods, especially with the left upper extremity and hand; and no impairment in sitting and standing, but he could not sit or stand for prolonged periods.  ECF Dkt. #11-3 at 15; ,

-15-

citing ECF Dkt. #11-14 at 4. The ALJ also cited to neurological results from 2008 showing a normal EMG nerve conduction study of Plaintiff's lower and upper extremities and no significant pathology on the lumbar spine CT scan. ECF Dkt. #11-3 at 14. The ALJ also noted that no objective evidence showed that Plaintiff could not perform the reduced range of light work. *Id*.

For these reasons, the undersigned recommends that the Court find that the ALJ provided Plaintiff with a full and fair hearing.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court affirm the ALJ's decision and dismiss Plaintiff's complaint in its entirety with prejudice.


DATE: July 27, 2011              */s/George J. Limbert*
                                 GEORGE J. LIMBERT
                                 UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).